# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-245-RAW-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Larry Adams (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on March 15, 1966 and was 48 years old at the time of the ALJ's decision.  Claimant obtained his GED. Claimant has worked in the past as a heavy equipment operator, backhoe operator, dozer operator, dump truck driver, scale clerk, mechanic, and plant maintenance worker.  Claimant alleges an inability to work beginning September 1, 2012 due to limitations resulting from back and knee problems, anxiety, depression,

3

fibromyagia, irritable bowel syndrome, migraine headaches, shoulder problems, mood swings, vomiting, chronic bronchitis, chronic constipation, carpal tunnel syndrome, arthritis, hearing problems, diabetes, HBP, poor dental health, thyroid problems, memory loss, acid reflux, and prostate problems.

**Procedural History**

On February 21, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 25, 2014, Administrative Law Judge ("ALJ") Edward Thompson conducted an administrative hearing. On November 21, 2014, he issued an unfavorable decision. The Appeals Council denied review on May 19, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform his past relevant work as a scale clerk. He also determined at step five that Claimant

4

could perform less than a full range of light exertion work, with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly account for Claimant's mental limitations; and (2) failing to conduct a proper credibility determination.

**Evaluation of Mental Impairments**

In his decision, the ALJ determined Claimant suffered from the severe impairments of spine disorders, other and unspecified arthropathies, migraines, other infectious and parasitic disorders, carpal tunnel syndrome, hearing loss not treated with cochlear implantation, diabetes mellitus, essential hypertension, thyroid gland, anxiety disorders, and affective disorders.  The ALJ concluded that when these impairments are combined, they constituted a severe impairment. (Tr. 14).  The ALJ concluded that Claimant retained the RFC to perform less than a full range of light work.  In so doing, the ALJ found Claimant could occasionally lift/carry (including upward pulling) 20 pounds and frequently lift/carry (including upward pulling) 10 pounds; stand/walk (with normal breaks) for a total of six hours in an eight hour workday; and sit (with normal breaks) for a total of six hours in an eight hour workday.  The ALJ determined Claimant's ability to push and/or

pull (including operation of hand and/or foot controls) was unlimited, other than the lift/carry restrictions. Claimant could never climb a ladder, rope, or scaffold, could occasionally balance, stoop, and climb ramps/stairs, frequently kneel, crouch, and crawl, frequently handle bilaterally and frequently finger bilaterally. Claimant must avoid concentrated exposure to noise. He was able to hear and understand spoken English. He could perform simple and some complex tasks, could relate to others on a superficial work basis, could adapt to a work situation, but cannot relate to the general public. (Tr. 17). After consultation with a vocational expert, the ALJ determined Claimant could perform his past work as a scale clerk, which the vocational expert classified light, semi-skilled with an SVP of 3. (Tr. 20). Alternatively, the ALJ found Claimant retained the RFC to perform the representative jobs of fruit distributor, bakery worker, and laminating machine off bearer, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 21). As a result, the ALJ found Claimant was not disabled from September 1, 2012 through the date of the decision. Id.

Claimant first contends the ALJ failed to account for his mental limitations in his RFC assessment. Claimant specifically argues that the ALJ gave "great weight" to the functional

assessments and conclusions found by the agency examiners without adopting all of their restrictions. The ALJ did, in fact, provide that the opinions of the state agency psychologists, Dr. JLK and Dr. Tom Shadid were entitled to "great weight." (Tr. 16)

Dr. JLK[2] found Claimant was moderately limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions while he indicated Claimant was markedly limited in the area of the ability to interact appropriately with the general public. (Tr. 127). In his narrative discussion of Claimant's mental residual functional capacity, however, the agency psychologist explains Claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, could adapt to a work situation, and could not relate to the general public. (Tr. 128). These findings were confirmed by Dr. James Metcalf (Tr. 130) and Dr. Tom Shadid. (Tr. 149).

The narrative assessment is incorporated verbatim by the ALJ in his RFC findings. (Tr. 17). The form itself indicates that the questions to which Claimant refers "help determine the individual's

---

[2] Claimant contends this agency psychologist is unidentified and the incorporation of his findings represents a due process violation. The findings are confirmed by Dr. Metcalf and identical findings are made by Dr. Shadid. To the extent, the citation to these findings was error, the result was harmless.

7

ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s). . . ."  (Tr. 126, 147-48).  The ALJ was not required to incorporate the narrative findings and then proceed to explain or incorporate the individual findings which made up the narrative findings.  Lee v. Colvin, 2015 WL 7003410, 2-3 (10th Cir.)("Having adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I.")  No error is found in the limitations incorporated by the ALJ from the agency psychologists' reports.

Claimant also states that the ALJ failed to adequately address Claimant's subjective statements as to the effects of his depression in his RFC.  This issue is more appropriately addressed in the credibility assessment.

Claimant asserts the ALJ should have included limitations resulting from his migraine headaches in the RFC.  The ALJ, however, makes clear in his step two findings that it is the combination of the various conditions that rises to the level of a "severe impairment" and not each individual condition taken in isolation.  (Tr. 14).  Moreover, the treatment record does not support Claimant's assertion that he has migraines and associated

8

nausea and vomiting once per week which he related to the agency psychologists. (Tr. 125, 475-614, 632, 815-16, 857, 1073). The fact he did not include a restriction, except for avoidance of concentrated exposure to noise, in the RFC for problems arising from migraine headaches did not invalidate the totality of the RFC assessment.

Claimant also contends the hypothetical questioning of the vocational expert was flawed since it did not incorporate all of Claimant's limitations. As stated, the RFC was not erroneous and, therefore, the questions which contained the RFC findings was not erroneous. Moreover, Claimant contends two jobs identified by the vocational expert – fruit distributor and laminating machine off bearer – require "detailed" work rather than "simple" work and cannot be relied upon at step five. The other two jobs identified by the vocational expert do meet the criteria for the RFC found by the ALJ. To the extent the identification of the two jobs which did not meet the RFC was error, it was harmless since other qualifying jobs were also identified.

Claimant asserts the ALJ should have included agoraphobia as an impairment - either severe or non-severe. The ALJ included anxiety in his step two findings but also found that the mental conditions were stabilized with a modification of medications.

9

(Tr. 16). Nothing in the medical record indicates that a modification of the treating condition would result in further functional limitations. Claimant merely cites to the definition of the condition without citing any reference in the record to additional required restrictions to this specific Claimant.

**Credibility Determination**

Claimant asserts the ALJ relied primarily upon his filing for unemployment benefits and the associated representation that he was able to work to reject his testimony as not credible. Claimant characterizes the examination of him by the ALJ as "badgering" since he repeatedly asked Claimant if he represented to the unemployment office that he was ready, willing, and able to work. (Tr. 55-58). The area of inquiry was certainly valid, especially in light of the fact Claimant did obtain employment at one point – just not substantially gainful employment. This Court perceives no "agenda" by the ALJ in this examination as stated by Claimant in his briefing, but rather a valid attempt to elicit an explanation for the apparently inconsistent position taken by Claimant in this disability proceeding and Claimant's efforts to obtain unemployment benefits.

While this Court agrees with Claimant that the fact a claimant seeks unemployment benefits while also seeking disability benefits

does not disqualify the claimant from either, it certainly may be considered in assessing a claimant's credibility in noting the inconsistency of the positions and statements taken. Moreover, the ALJ did not simply rely upon this fact to discount Claimant's credibility. He provided an extensive recitation of the medical evidence, Claimant's daily and life activities, and his treatment results which degrades Claimant's credibility as to the extent of his functional limitations.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ found Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision", a wholly unhelpful boilerplate statement. (Tr. 18). Throughout the decision, however, the ALJ finds Claimant was not credible. The ALJ methodically proceeded to cite the applicable legal standards for evaluating credibility, analyze Claimant's activities of daily living which are inconsistent with Claimant's testimony, and proceed through the medical record finding conflicts with the level

of limitation to which Claimant testified concerning the location, duration, frequency, and intensity of his pain.  (Tr. 16-19).  The discussion contains thoughtful reasoning and careful consideration of the record.  No error is found in this credibility analysis.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE